Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3505 | **DATE** | October 11, 2001 |
| **CASE TITLE** | *Andrew Plotkin, et al. vs. IP Axess, Inc., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court (1) grants defendants' motion to transfer venue [18-1]. The court orders that this case be transferred *forthwith*, pursuant to 28 U.S.C. § 1404(a) and Local Rule 83.4, to the United States District Court for the Eastern District of Texas, Sherman Division. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | OCT 1 2 2001 date docketed | 33 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | Cm docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | OCT 11 PM 5:55 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

DOCKETED
OCT 1 2 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW PLOTKIN, as Trustee for Zachary
S. Plotkin Trust dated December 17, 1995;
ANDREW PLOTKIN as Trustee for Natalie
R. Plotkin Trust dated December 17, 1995;
ROBERT PLOTKIN as Beneficiary of Robert
Plotkin IRA; Robert Plotkin IRA Rollover
dated November 10, 1999; ROBERT
PLOTKIN; NANCY PLOTKIN; and
MANUEL PLOTKIN,

    Plaintiffs,

v.

IP AXESS, INC., a Texas corporation formerly
named DATA RACE, INC. d/b/a DATA
RACE; MICHAEL A. McDONNELL;
JAMES G. SCOGIN; LIVIAKIS FINANCIAL
COMMUNICATION, INC.; and JOHN
LIVIAKIS,

    Defendants.

Case No. 01 C 3505

Judge James H. Alesia

## MEMORANDUM OPINION AND ORDER

Before this court is defendants IP Axess, Inc. ("IP Axess"), Michael A. McDonnell ("McDonnell"), and James A. Scogin's ("Scogin") motion to transfer this case to the United States District Court for the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court grants defendants' motion.

### I. BACKGROUND

In considering a motion to transfer for improper venue, the court accepts all well-pleaded allegations in the complaint as true unless controverted by defendants' affidavits. *QSN Indus., Inc. v. Sanderson*, No. 95 C 3356, 1995 WL 743751, at *1 (N.D. Ill. Dec. 13, 1995).[1]

---

[1] Unless otherwise noted, the court takes the following facts from plaintiffs' first amended complaint.

Defendant IP Axess (formerly named Data Race, Inc.) d/b/a Data Race (the "Company") is a Texas corporation with its executive offices and principal place of business located in Plano, Texas. It is registered as a foreign corporation with the Illinois Secretary of State's office. The Company designs, manufactures and markets a line of communication products for remote access to the corporate environment. These products give teleworkers access to all elements of corporate communications networks, including the Internet, Intranet and PBX. McDonnell served as Chief Operating Officer for the Company throughout the relevant period. He also served as the Company's President, Chief Executive Officer, and a Director for part of the relevant period. Scogin served as the Company's Controller for the relevant period. He also served as the Company's Senior Vice President for Finance, Chief Financial Officer, Secretary, Treasurer, and Acting Chief Executive Officer for part of the relevant period.

According to the complaint, from May 12, 2000 through September 1, 2000 (the "Stock Purchase Period"), the Company concocted and carried out a calculated campaign designed to attract potential investors to purchase the Company's common stock, and to induce existing investors to increase the amount of their holdings of its stock. The Company carried out this campaign by issuing a series of false and misleading press releases which had as their purpose the portrayal of the Company as a vibrant, greatly growing company with tremendous prospects in the telecommunications field. In these press releases, the Company announced the signing of agreements with major customers who had agreed to purchase the Company's products. According to the releases, just one of these agreements would net the Company millions of dollars. According to the complaint, the Company made these announcements without any reasonable basis for believing it wold actually collect the amounts required to be paid under the agreements. After these releases, "the campaign ultimately collapsed and the true information about the Company's poor financial condition, business and future prospects came out, causing the Company's stock to be almost worthless." (Am. Comp. ¶ 28.) After the final press release,

there was no further mention of the agreements by the Company anywhere – they were not included in the Company's annual report nor in its filings with the SEC.

According to the complaint, plaintiff Robert Plotkin specifically relied on these press releases in purchasing or recommending the purchase of the Company's stock. Robert Plotkin was in Chicago when he received and read these press releases, and most of the stock purchases were made in Chicago through brokers situated in Chicago. Plaintiffs purchased a total of approximately 97,100 shares of Data Race common stock. All plaintiffs suffered a loss in their investment.

As a result, plaintiffs instituted this seven-count security action, setting forth claims under sections 10(b) and 20(a) of the Security Exchange Act of 1934, 15 U.S.C. § 78j(b) and 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. Also, plaintiffs allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, along with common law fraud claims. Defendants now move to transfer this case to the Eastern District of Texas pursuant to § 1404(a).

## II. DISCUSSION

Pursuant to § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is appropriate under § 1404(a) where: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. *Id.*; *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). It is in the sound discretion of the trial judge to determine the weight accorded to each factor. *See Coffey*, 796 F.2d at 219.

The parties do not dispute that jurisdiction and venue are proper both in the Northern District of Illinois and the Eastern District of Texas. What the parties dispute is whether the

3

convenience of the parties and witnesses and the interests of justice weigh in favor of transfer. It is those two factors, therefore, that the court addresses.

### A.   Convenience of the parties and the witnesses

First, the court must consider the convenience of the parties and the witnesses. When evaluating the conveniences, the court considers five factors: (a) the plaintiffs' choice of forum, (b) the situs of the material events, (c) the relative ease of access to sources of proof, (d) the convenience of the parties, and (e) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). The court will consider each factor in turn.

#### 1.   Plaintiffs' choice of forum

The court recognizes that the plaintiffs' choice of forum is generally entitled to substantial weight, especially when it is plaintiffs' home forum. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). However, where the plaintiffs' chosen forum is not the plaintiffs' home forum or lacks significant contact with the litigation, the plaintiffs' chosen forum is entitled to less deference. *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 831 (N.D. Ill. 1999). Although plaintiffs' choice of forum is an important consideration in determining whether a motion to transfer should be granted, it is not absolute. *Amoco Oil Co.*, 90 F. Supp. 2d at 960.

In this case, plaintiffs' chosen forum is Illinois. If Illinois was plaintiffs' home forum, plaintiffs certainly would have alleged this fact in arguing that this court retain jurisdiction. Rather, the plaintiffs fail to allege the residence of the named plaintiffs either in their first amended complaint or in their response to defendants' motion to transfer. Therefore, the court presumes that Illinois is not the plaintiffs' home forum. Further, from the evidence submitted by the parties, it appears that Illinois is not the situs of the majority of the material events. *See infra* Part II.A.2. Although the Company is registered as a foreign corporation with the Illinois Secretary of State's office, it is a Texas corporation with its executive offices and principal place of business located in Plano, Texas. Also, although the press releases were received and read

4

in Illinois, these statements were generated at the Company's headquarters in Texas. Although some of the stock was purchased in Illinois, the purchase of stock is not at issue here.

Illinois is plaintiffs' choice of forum, but their choice has no significant connection to their claim, as the heart of the controversy involves the allegedly false and misleading press releases created and disseminated in Plano, Texas. Thus, plaintiffs' choice of forum becomes only one of the many factors the court considers. *See Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1995); *Amoco Oil Co.*, 90 F. Supp. 2d at 961.

### 2. Situs of material events

Illinois is not the situs of the majority of the material events in this case. Plaintiffs claim that because some of the stocks were purchased in Chicago and the basis for these purchases were the press releases received and read in Illinois, the material events underlying this cause of action occurred in Illinois. The court disagrees.

The material events in this case are not the actual purchases of stock or the receipt of the press releases. Rather, the material events are the creation and dissemination of the press releases, all of which occurred in Plano, Texas. Any decision regarding these releases, as well as the actual creation and dissemination of these releases, occurred at the Company's corporate headquarters in Plano, Texas. Further, almost all relevant third-party witnesses -- such as vendors with whom IP Axess signed contracts, accountants who reviewed or audited financial statements, and analysts -- worked with the Company at its corporate headquarters in Texas. Finally, events underlying the press releases -- such as negotiations of agreements between the Company and third parties; the development of relationships between the Company and third parties; the development, marketing, and sale of the Company's products; changes in the Company's management; and financial reports prepared in and issued from the Company's corporate headquarters -- occurred largely in Plano, Texas. Therefore, Texas is the situs of the material events in this case. *See QSN Indus., Inc.*, 1995 WL 743751, at *5 (finding in a

5

securities action involving detrimental reliance on a company's allegedly misleading financial information, that the situs of material events was the company's residence where it prepared the financial information). Accordingly, the court finds that this factor weighs in favor of transfer.

### 3. Relative ease of access to sources of proof

Plaintiffs do not specify any evidence located in Illinois. Rather, almost all the Company's present and former employees, and all the documents relating to the press releases are located in Texas. According to Scogin's affidavit, all the Company's corporate records relevant to this case – approximately 50,000 to 75,000 documents – are located in Plano, Texas, with the exception of some accounting records which are located in San Antonio, Texas. (Scogin Aff. ¶ 3.) Thus, the Eastern District of Texas would have greater access to the sources of proof. Accordingly, this factor also weighs in favor of a transfer.

### 4. Convenience of the parties

Plaintiffs contend that they will experience inconvenience if the litigation proceeds in Texas rather than Illinois because they are individuals and they will need to hire new counsel in Texas and leave their law practice to testify. Meanwhile, defendants contend that a trial in Illinois will require extended absences for Scogin, the Company's acting President and CEO, as well as up to six of the Company's seven current employees, and that such absences would cause severe economic hardship on the Company. Accordingly, the court finds this factor weighs neither in favor of transfer nor in favor of retention.[2]

---

[2]Plaintiffs argue that the witness list included in the affidavit attached to defendants' motion to transfer is insufficient under the *Brandon Apparel Group, Inc. v. Quitman Mfg Co.*, 42 F. Supp. 2d 821, 833-34 (N.D. Ill. 1999). The court disagrees. The affidavit sufficiently lists the expected witnesses and specifies why that testimony is important in this case, in accordance with *Brandon Apparel*.

6

### 5. Convenience of the witnesses

Plaintiffs argue there are six Chicago area witnesses. Two of these witnesses are brokers, who might be unwilling to go to Texas due to the "volatile" nature of the market. Defendants list seventy-two witnesses. Of these witnesses, twenty-six reside in or near Plano, Texas, and thirty-three reside in either San Antonio or Austin, Texas. It is clear that more witnesses would be inconvenienced if the litigation proceeds in Illinois rather than in Texas.

Although plaintiffs are correct that the issue of witness convenience should not turn on who has the longer list of witnesses, *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994), the significance of defendants' witnesses weighs in favor of a transfer. Defendants, their board of directors, and their current and future employees will be key in substantiating the parties' claims, particularly with regard to the source and validity of the press releases, the facts underlying the statements at issue, the information available to the officers and employees who authorized or made these statements, the circumstances of the agreements referenced in the press releases, product development, the financial performance of the Company, and the Company's corporate policies. Again, about sixty of defendants' witnesses who will testify to these issues reside in Texas. On the other hand, plaintiffs' six Chicago witnesses will testify merely to the fact that plaintiffs purchased the Company's securities. Accordingly, the court finds that this factor weighs in favor of a transfer.

### B. Interests of Justice

The court must also examine the interests of justice. This analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Amoco Oil Co.*, 90 F. Supp. at 961; *Coffey* 796 F.2d at 221. It includes such considerations as (1) the speed at which the case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the desirability of resolving controversies in their locale. *Amoco Oil Co.*, 90 F. Supp. 2d at 962.

## 1. The speed at which the case will proceed to trial

For the purposes of evaluating this factor, the court used the reports from the Federal Court Management Statistics for the period ending September 30, 2000, which are the latest statistics available at this time. Of the numerous court management statistics available to the court's current analysis, the two most relevant statistics are (1) the median months from filing to disposition for civil cases and (2) the median months from filing to trial for civil cases. *Amoco Oil Co.*, 90 F. Supp. 2d at 962.

The median months from filing to disposition for civil cases in the Northern District of Illinois was 5.1 months, compared to 24.3 months in the Eastern District of Texas. *United States District Court–Judicial Caseload Profile*, at http://jnet.ao.dcn/cgi-bin/cmsd2000.pl. (last visited Oct. 10, 2001). The median months from filing to trial for civil cases in the Northern District of Illinois was 27 months, compared to 15 months in the Eastern District of Texas. *Id.* These statistics suggest that, although the parties might receive a trial more quickly in the Eastern District of Texas, the parties are more likely to receive a quicker resolution in the Northern District of Illinois. Accordingly, this factor weighs in favor of retention.

## 2. Court's familiarity with applicable law

In this case, plaintiffs' amended complaint contains numerous counts against defendants under the 1934 Securities Exchange Act, the Illinois Consumer Fraud and Deceptive Practices Act, and common law fraud. The court recognizes that the Northern District of Illinois is more familiar with substantive Illinois law than the Eastern District of Texas. However, courts often are called upon to decide substantive legal questions based upon another state's laws. Further, courts in both Texas and Illinois are familiar with and capable of litigating a case involving the Securities Exchange Act and common law fraud. Thus, this factor weighs neither in favor of transfer nor in favor of retention.

### 3. The relation of the community to the occurrence and the desirability of resolving controversies in their locale

As previously explained, *supra* Part II.A.2, Plano, Texas is the situs of material events. Defendants' principal place of business, headquarters, and majority of employees are located in Texas. Although it is true that plaintiffs purchased stocks and read the allegedly false press releases in Illinois, the stocks were for a Texas business and the source of alleged false information came from Texas. Thus, this court finds that Texas has stronger interest and connection with this case than Illinois. Accordingly, this factor weighs in favor of transfer.

In sum, the court finds that transfer to the Eastern District of Texas is proper. Although plaintiffs chose this court as the forum, their choice is but one of the many factors the court considers. The most compelling factors – the situs of the material events, the relative ease of access to potential sources of proof, the convenience of the witnesses and the community's interests – weigh heavily in favor of transfer.

### III. CONCLUSION

For the reasons set forth in this opinion, the court grants defendants' motion to transfer. The court orders this case be transferred forthwith, pursuant to 28 U.S.C. § 1404(a) and Local Rule 83.4 to the United States District Court for the Eastern District of Texas, Sherman Division.

Date: **OCT 11 2001**

James H. Alesia
United States District Judge